IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| SCHNEIDER NATIONAL CARRIERS, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 5:20-CV-363 (MTT) |
| UNITED SPECIALTY INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendant. | ) ) | |

## ORDER

In this declaratory judgment action, Plaintiff Schneider National Carriers, Inc. ("Schneider") seeks a declaration that Defendant United Specialty Insurance Company ("United") owes Schneider a duty to defend and indemnify in an underlying lawsuit. Doc. 10.  Schneider has moved for summary judgment, arguing that it is an insured covered by a policy issued by United to Road Cargo, Inc.  Doc. 26-1 at 8-12.  For the reasons that follow, Schneider's motion for summary judgment on the issue of duty to defend is **GRANTED**.  But because the underlying lawsuit is ongoing and liability has not been established, the duty to indemnify issue is not ripe.  Thus, Schneider's motion for summary judgment on that issue is **DENIED without prejudice.**

## I. BACKGROUND[1]

On December 2, 2017, a truck driver employed by Road Cargo, Rajinderpal Singh, was involved in a motor vehicle accident with Steven Winiecki. Docs. 26-2 ¶ 1; 34-1 ¶ 1. The tractor and trailer driven by Singh were owned by Road Cargo, and Road Cargo had dispatched Singh to haul a load for Walmart. Docs. 26-2 ¶ 4-5, 13; 34-1 ¶¶ 4-5, 13. Winiecki sued Singh, Road Cargo, and others in Illinois state court for his injuries. Docs. 26-2 ¶¶ 14-15; 34-1 ¶¶ 14-15. Two years after Winiecki's original complaint, Winiecki's third amended complaint added Schneider as a defendant.[2] Docs. 26-2 ¶ 31; 34-1 ¶ 31.

According to Winiecki, Walmart hired Schneider as a "motor carrier" to haul the load in question. Doc. 37-3 at 11-12. Walmart paid Schneider, and Schneider was listed on the bill of lading for the load. *Id.* Schneider then, according to Winiecki, hired Road Cargo as a "sub-hauler" to deliver the load. *Id.* at 12. Winiecki alleges that Schneider, as a motor carrier, employed Road Cargo and Singh, and thus Schneider is vicariously liable for their actions. Docs. 37-3 at 11-16; 26-2 ¶ 32; 34-1 ¶ 32.

Whatever Winiecki's reasons for alleging Schneider acted as a "motor carrier," that allegation gave rise to this coverage dispute. Schneider claims, notwithstanding

---

[1] Unless otherwise stated, all facts are undisputed. In United's response to Schneider's statement of material facts, it failed to cite to any record evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 56. *See* Doc. 34-1. Moreover, United failed to attach its own statement of material facts, which is also required under Local Rule 56. Despite these deficiencies, the Court has still "review[ed] the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (citation and quotation marks omitted). If the evidence in the record shows that a fact is disputed, the Court draws all justifiable inferences in United's favor for purposes of summary judgment.

[2] A fourth amended complaint is now the operative complaint in the Winiecki lawsuit. In the fourth amended complaint, Winiecki added a claim against Schneider for negligent hiring. Doc. 26-2 ¶ 34; 34-1 ¶ 34. Schneider does not seek coverage for this claim under United's policy.

Winiecki's allegations, that the "true facts" reveal that it was acting as a freight broker. Docs. 26-1 at 12-14; 38 at 3.

United's policy insuring Road Cargo provides that United has a duty to defend any "insured" against lawsuits for damages. Docs. 26-2 ¶ 20; 34-1 ¶ 20; 30 at 30. Insured is defined, in relevant part, to include "*[a]nyone liable* for the conduct of an 'insured[,]'" including anyone liable for the conduct of an individual permissibly operating a Road Cargo covered vehicle. Doc. 26-2 at 21; 34-1 ¶ 21; 30 at 30 (emphasis added). Because Winiecki seeks to hold Schneider vicariously liable for the acts of United's insureds, Schneider claims it is covered by United's policy. United disagrees.

In its letter denying coverage, United substantively addressed two reasons Schneider is not covered by its policy. First, relying only on Winiecki's allegations, United contended that Schneider was acting as a motor carrier. Doc. 10-3 at 5. The policy excludes from the definition of an insured:

> (1) Any 'motor carrier' for hire or his or her agents or employees, other than [Road Cargo] and [Road Cargo's] employees.

Docs. 26-2 ¶ 21; 34-1 ¶ 21; 30 at 30 (quotations omitted). As noted, Schneider denies it was acting as a motor carrier and claims United should have considered abundant evidence confirming this.

Second, United, citing the very evidence Schneider says United should have considered in its first coverage argument, contends Schneider was actually a freight broker. And as a freight broker, United said Schneider could not legally be held liable for the actions of Road Cargo and its employee because Road Cargo was an independent contractor. Doc. 10-3 at 6. The evidence that Schneider was a freight broker is convincing. The master transportation contract between Schneider and Road

Cargo said Schneider was a "freight broker" and Road Cargo was the "carrier"—not an agent or a "sub-hauler." Doc. 10-2 at 1. And the master contract provided that "[Road Cargo] is independent of [Schneider] and that [Road Cargo] has exclusive control and direction of the work [Road Cargo] performs[.]" *Id*. United concluded that "Schneider cannot reasonably be deemed to have been acting as a motor carrier as respects the haul at the time of the [a]ccident, and therefore cannot be vicariously liable for Road Cargo's conduct." Doc. 10-3 at 6. In short, United argued Schneider was not covered because Winiecki's claims against Schneider would eventually fail on the merits.

Finally, United's denial of coverage letter "reserved" other possible coverage defenses, including any based on the policy's "Exposure/Entity Exclusion," which excludes coverage for:

> 1. Bodily injury or property damage that was not caused by [Road Cargo] or resulting from the ownership, maintenance, or use of a covered auto by [Road Cargo]; or
>
> 2. Bodily injury or property damage caused by any other person or entity doing business with [Road Cargo] unless such person or entity is disclosed to [United] in writing and scheduled on [Road Cargo's] policy.

*Id*.; Doc. 34 at 17; 30 at 43 (cleaned up).

United's denial letter set up an odd dichotomy. On the question of whether Schneider was acting as a motor carrier, United only looked to the "four corners" of Winiecki's complaint. Yet, on the question of whether Schneider was a freight broker that could not ultimately be vicariously liable for the acts of United's insureds, United cited authority establishing that it was not confined to the "four corners" of the complaint

and thus considered "true facts" establishing that Schneider was acting as a freight broker.³  Doc. 10-3 at 6.

This dichotomy was not to last.  Perhaps understandably, United does not now rely on its second coverage defense.⁴  In its place, United relies on its "reserved" defense that the exposure/entity exclusion precludes coverage.⁵  Doc. 34 at 16-18.  But in the process, United demonstrated that it knew of "true facts" outside the "four corners" of the complaint establishing that Schneider acted not as a motor carrier but a freight broker.

## II. STANDARD

A movant is entitled to summary judgment upon showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When the movant bears the burden of proof at trial, it must show there is no genuine dispute that it has met the elements of its claim or defense.  *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991).  The non-movant may defeat a properly supported motion by producing

---

³ In its denial of coverage letter, United cited *Scottsdale Ins. Co. v. MV Transp.* for the proposition that it could consider extrinsic facts to determine whether a duty to defend exists.  Doc. 10-3 at 6 (citing 36 Cal. 4th 643, 655 (2005)).  United then argued that the extrinsic facts establishing that Schneider was acting as a freight broker negate Winiecki's allegations of vicarious liability.  *Id*.  However, *Scottsdale* does not stand for the proposition that an insurer can use extrinsic facts to deny an insured the duty to defend against a covered claim merely because the claim will ultimately fail.  Rather, *Scottsdale* states that an insurer's duty to defend lasts until the underlying lawsuit is concluded, or until it has been proved by subsequently developed facts that there is no potential for coverage.  *Id*. at 655, 57.  Thus, United forces *Scottsdale*'s holding where is doesn't belong, while ignoring its holding where it certainly does—the motor carrier allegations that United knew to be false.

⁴ Likely because the possibility that Schneider might ultimately prevail on the merits of Winiecki's claim does not abrogate United's duty to defend.  *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564, 565, 490 S.E.2d 374, 376 (1997).

⁵ Schneider does not contend that United waived its right to raise the exposure/entity exclusion by not substantively addressing it in its denial of coverage letter.

"significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)).  In other words, that there is indeed a genuine dispute regarding a material fact.  *See id.*

"A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quotation marks omitted).  Therefore, when deciding if summary judgment is appropriate, the court must not "weigh the evidence and determine the truth of the matter" on its own but should determine only whether a reasonable jury could find in favor of the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").  In doing so, the court should draw all justifiable inferences, and resolve any reasonable doubts concerning the facts, in favor of the non-movant.  *Id.* at 255; *Info. Sys. & Networks Corp.*, 281 F.3d at 1224.  If, after reviewing the entirety of the record "in the light most favorable to the [non-movant]," the court determines a reasonable jury could not find in favor of the non-movant, then summary judgment is appropriate.  *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("'[T]he District Court [must] consider all evidence in the record when reviewing a motion for summary judgment—pleadings, depositions, interrogatories, affidavits, etc.—and can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists.'"). (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986)).

## III. DISCUSSION

Both parties agree that Georgia law controls because, although the policy was delivered in California, there is no California statute that governs the outcome. Docs. 26-1 at 7; 34 at 4; *see Barrs v. Auto-Owners Ins. Co.*, ___F. Supp. 3d ___, 2021 WL 4461559, at *6 (M.D. Ga. Sept. 29, 2021); *Mt. Hawley Ins. Co. v. East Perimeter Pointe Apartments*, 861 F. App'x 270, 275 (11th Cir. 2021).

"Insurance is a matter of contract and the parties are bound by the terms of the policy." *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 221, 231 S.E.2d 245, 249-50 (1976) (citations omitted). In Georgia, the interpretation of an insurance policy is generally "a question of law," to which courts apply the "ordinary rules of contract construction." O.C.G.A. § 13-2-1; *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 269 Ga. 326, 327, 498 S.E.2d 492, 494 (1998) (citations omitted). "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy." O.C.G.A. § 33-24-16. "[U]nder the rules of contract construction, the policy is construed against the insurer as the drafter of the policy and any exclusions from coverage are strictly construed." *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 371-72, 599 S.E.2d 220, 221 (2004) (citation and brackets omitted). If the policy exclusions are unambiguous, they must be given effect "even if beneficial to the insurer and detrimental to the insured." *Id*. at 372 (quoting *Jefferson Ins. Co. of N.Y. v. Dunn*, 269 Ga. 213, 216, 496 S.E.2d 696, 699 (1998)); *see also Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Ass'n, Inc.*, 288

Ga. App. 355, 356-57, 654 S.E.2d 207, 209 (2007); *Nationwide Mut. Fire Ins. Co. v. Somers*, 264 Ga. App. 421, 426, 591 S.E.2d 430, 435 (2003).

### A. Whether United Owes Schneider a Duty to Indemnify

The duty to indemnify is separate from the duty to defend and depends on whether the insured is required to pay damages. *Somers*, 264 Ga. App. at 425-26, 591 S.E.2d at 434. Thus, disputes over indemnification are typically not ripe until liability is established. *See Trizec Properties v. Biltmore Constr. Co.*, 767 F.2d 810, 812 (11th Cir. 1985); *Travelers Ins. Co. v. Waltham Indus. Laboratories Corp.*, 883 F.2d 1092, 1099 (1st Cir. 1989) ("The duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims."). Here, the underlying lawsuit is ongoing, and liability has not been established. Doc. 34 at 6 (stating that Schneider's motion for summary judgment in the underlying lawsuit is pending). Accordingly, Schneider's request for a declaration that United has a duty to indemnify is not ripe and is **DENIED without prejudice**.

### B. Whether United Owes Schneider a Duty to Defend

Under Georgia law, "an insurer's duty to pay and its duty to defend are separate and independent obligations." *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564, 565, 490 S.E.2d 374, 376 (1997) (citation and quotation marks omitted). "The insurer may be obligated to defend, even [if it is] not ultimately liable for any judgment[.]" *Id*. at 565, 490 S.E.2d at 376-77 (cleaned up). "[T]he insurer is obligated to defend where ... the allegations of the complaint against the insured are ambiguous or incomplete with respect to the issue of insurance coverage." *Id*. at 565, 490 S.E.2d at 376. And "it is only where the complaint sets forth true factual allegations showing no

coverage that the suit is one for which liability insurance coverage is not afforded and for which the insurer need not provide a defense." *Id*. "Where the claim is one of potential coverage, doubt as to liability and [the] insurer's duty to defend should be resolved in favor of the insured." *Id*. (citation and quotation marks omitted).

Generally, "in making a determination of whether to provide a defense, an insurer is entitled to base its decision on the complaint and the facts presented by its insured." *Colonial Oil Industries, Inc. v. Underwriters Subscribing to Policy Nos. TO21504670 & TO31504671*, 268 Ga. 561, 562, 491 S.E.2d 337, 338 (1997). However, when a complaint alleges facts that place it outside the scope of coverage, but the insured notifies the insurer of facts that would bring the claim within the scope of coverage, "the insurer has an obligation to give due consideration to its insured's factual contentions and to base its decision on 'true facts.'" *Id*. Thus, "Georgia law does not permit an insurer to rely on the allegations of the complaint to deny coverage when the facts that the insurer knows or can ascertain show that the claim is within the coverage of the policy." *JLM Enterprises, Inc. v. Houston Gen. Ins. Co.*, 196 F. Supp. 2d 1299, 1304 (S.D. Ga. 2002) (citing *Elan Pharma. Rsch. Corp. v. Employers Ins. of Wausau*, 144 F.3d 1372, 1376 n.6 (11th Cir. 1998)). "Under such circumstances, an insurer has a duty to conduct a reasonable investigation into the insured's contentions, and if the investigation reveals facts arguably placing the claim within the policy coverage, then the insurer would have a duty to defend." *Id*. (citing *Anderson v. So. Guar. Ins. Co.*, 235 Ga. App. 306, 308, 508 S.E.2d 726, 729 (1998)) ("If the true facts are known or ascertainable to the insurer at the outset, then the insurer is obligated to defend the suit, just as if the complaint against the insured falsely alleged coverage."). So, if true facts

showing coverage were known or ascertainable to United, then it would be obligated to defend Schneider.

*1. "True Facts" Demonstrate that Schneider Was Not Acting as a Motor Carrier*

Winiecki seeks to hold Schneider vicariously liable for the conduct of United's insureds, and thus, to that extent, Schneider is an "insured" as defined in United's policy. Docs. 30 at 30; 37-3 at 11-16. But United, relying solely on Winiecki's allegations, argues that Schneider was acting as a motor carrier and thus is excluded from the definition of "insured." Doc. 34 at 8-11.

Specifically, the policy excludes from the definition of an insured "any 'motor carrier' for hire or his or her agents or employees, other than [Road Cargo] and [Road Cargo's] employees[.]"[6] Doc. 30 at 30 (quotations omitted). "Motor carrier" is defined as "a person or organization providing transportation by 'auto' in the furtherance of a commercial enterprise." *Id*.; Docs. 26-2 ¶ 22; 34-1 ¶ 22.[7] In short, if Schneider was acting as a motor carrier, there is no coverage. But if it wasn't, there is coverage, subject to United's second argument based on the exposure/entity exclusion.

The record establishes that United knew or could have known facts showing that Schneider was acting as a freight broker and not a motor carrier, and that "arguably

---

[6] The policy excludes from the definition of an insured only motor carriers that are subject to and meet motor carrier insurance requirements by a means other than auto liability insurance. But because Schneider was not acting as a motor carrier, the Court need not determine whether the insurance requirement was satisfied.

[7] Not at all incidentally, the policy recognizes that motor carriers can, at times, act as freight brokers. United excludes coverage for liability arising from *Road Cargo's* operations as a freight broker. Doc. 30 at 53. The policy defines "freight broker" as "any person or corporation who, for compensation, arranges or offers to arrange the transportation of property by any 'trucker.'" *Id.*

plac[es] the claim within the policy coverage."[8]  See *JLM Enterprises*, 196 F. Supp. 2d at 1304.  It is undisputed that Walmart contacted Schneider's *brokerage* division to arrange the transportation of the load.  Doc. 26-2 ¶ 7; 34-1 ¶ 7.  Schneider's brokerage division does not take possession of or move goods.  Doc. 37-14 at 62:9-10.  As discussed, United acknowledged in its denial of coverage letter that under the master contract between Schneider and Road Cargo, which was in effect at the time of the accident, "Schneider cannot reasonably be deemed to have been acting as a motor carrier as respects the haul at the time of the [a]ccident."  Doc. 10-3 at 6.  That master contract defined Schneider as "Broker" and Road Cargo as "Carrier" and stated that at the time of the accident, Road Cargo was "an independent contractor of Broker and that Carrier [had] exclusive control and direction of the work Carrier performs pursuant to this Agreement and each Tender Document."[9]  Doc. 10-2 at 1.  Thus, Schneider has come forward with evidence of true facts known or ascertainable to United that showed Schneider was covered under the policy because it was acting as a broker and not a motor carrier.

Far from contradicting this evidence, United acknowledges it.  Yet, it ignores that evidence, preferring, on this question, to limit its coverage investigation (and argument

---

[8] Again, Schneider need only establish that true facts arguably place the claim within the scope of coverage, not that it is certainly covered by the policy.  *JLM Enterprises, Inc.*, 196 F. Supp. 2d at 1304; *Anderson*, 235 Ga. App. at 308, 508 S.E.2d at 729; *Penn-Am Ins. Co.*, 268 Ga. at 565, 490 S.E.2d at 376.

[9] United does argue that it is not established that the master contract was applicable to the load in question.  But the master contract did not reference *any* particular loads.  Rather, it defined the relationship between Road Cargo and Schneider while the contract was in effect.  Doc. 34-1 ¶ 11.  Moreover, United has not pointed to a different applicable contract or any other evidence that tends to establish that the master contract did not apply or that refutes Schneider's evidence that the master contract did apply.  *See* Docs. 37-14 at 178:4-16; 10-2 at 1, 6; *see also* Doc. 37-13 at 168:20-169:1 (testimony that Road Cargo got all of its loads from brokers).  Indeed, in its denial of coverage letter, United stated that Schneider's tender of load to Road Cargo was "presumably made pursuant to the terms of the Master Transportation Contract[.]"  Doc. 10-3 at 6.


in response to Schneider's motion for summary judgment) to the "four corners" of Winiecki's complaint. Doc. 34 at 9 ("the Winiecki Action contends the Schneider was hired as the motor carrier"); *id*. at 10 ("Here, Winiecki clearly alleges that Schneider was hired as the motor carrier[.]"); *id*. at 11 ("[T]he Winiecki Action clearly assert[s] that Schneider was still providing transportation and, thus, acting as a 'motor carrier.'"). But because Schneider put United on notice of factual contentions that would bring it within the scope of coverage, United cannot simply rely on the conclusory allegations in the Winiecki complaint to deny coverage.[10]

United cites *Essex Ins. Co. v. Barrett Moving & Storage, Inc*. for the proposition that an intermediary who accepts responsibility for a load may be considered a motor carrier. Doc. 34 at 10 (citing 885 F.3d 1292, 1301 (11th Cir. 2018)). However, in *Barrett*, the Eleventh Circuit considered whether the Carmack Amendment, which holds motor carriers strictly liable for damaged shipments, could be applied to freight brokers who accepted legal responsibility for the shipment. *Id*. at 1301. *Barrett* does not speak to the policy terms used by insurers to define the scope of coverage.

United also argues that Schneider was acting as a motor carrier because it "was hired and paid to ensure the property was transported." Doc. 34 at 10. However, that broad statement can apply equally to motor carriers and freight brokers. *See* Doc. 30 at 41, 53.

In short, the undisputed evidence establishes that there were true facts known or ascertainable to United that showed Schneider was not acting as a motor carrier, and

---

[10] United does not argue that the motor carrier exclusion applies regardless of whether a motor carrier was acting as a broker for the load in question. The parties agree the relevant question is whether, for the load in question, Schneider acted as a motor carrier or freight broker. Docs. 34 at 2, 8-11; 38 at 5.

that arguably places the claim within the policies coverage.  See *JLM Enterprises*, 196 F. Supp. 2d at 1304; *Anderson*, 235 Ga. App. at 308, 508 S.E.2d at 729.  United has presented no evidence to the contrary.  Accordingly, United owes Schneider a duty to defend.

   *2. The Exposure/Entity Exclusion Does Not Apply*

United also argues that the policy's "exposure/entity exclusion" applies.  Doc. 34 at 16-18.  The policy does not provide coverage for:

> 1. Bodily injury or property damage that was not caused by [Road Cargo] or resulting from the ownership, maintenance, or use of a covered auto by [Road Cargo]; or
>
> 2. Bodily injury or property damage caused by any other person or entity doing business with [Road Cargo] unless such person or entity is disclosed to [United] in writing and scheduled on [Road Cargo's] policy.

Doc. 30 at 43 (cleaned up).

United first argues that a vicariously liable entity, as Schneider is alleged to be, is deemed to have "caused" the damages that are caused by its agent.  Doc. 34 at 17.  Thus, United argues that because Schneider, which was not scheduled on the policy, is alleged to be an entity that (vicariously) caused the damages, United has no duty to defend Schneider.  *Id*.  That argument, on its face, conflicts with United's obligation to cover "[a]nyone liable for the conduct of an 'insured.'"  Not surprisingly, United cites no relevant authority to support that argument, and the Court has found none.

Under Georgia law, "[w]hen a servant causes injury to another, the test to determine if the master is liable is whether or not the servant was at the time of the injury acting within the scope of his employment and on the business of the master."  *Hicks v. Heard*, 286 Ga. 864, 865, 692 S.E.2d 360, 361 (2010).  Thus, vicarious liability

-13-

is "a legal fiction by which a court can hold a party legally responsible for the negligence of another, not because the party did anything wrong, but, rather because of the party's relationship to the wrongdoer."  1 American Law of Torts § 4:1 n.3 (citing *Bauermeister v. Churchman*, 59 N.E.3d 969 (Ind. Ct. App. 2016)).  Accordingly, a vicariously liable entity does not cause the damages that are caused by its agent, it is only deemed liable for those damages.

Thus, United's argument that Schneider caused Winiecki's damages is without merit.  The Winiecki complaint alleges that the damages at issues were caused by Singh, Road Cargo's employee.  Doc. 37-3 at 16 (alleging Schneider is vicariously liable for the actions of Singh).  It is further undisputed that Singh was operating a covered motor vehicle on behalf of Road Cargo.  Doc. 26-2 ¶ 27; 34-1 ¶ 27; 30 at 12.  Clearly, Schneider did not cause the damages alleged in the Winiecki lawsuit.[11]

United's second argument is even more of a stretch.  If, United argues, a vicariously liable entity does not "cause" the damages for which it is deemed liable, then that should extend to the vicarious liability claims against Road Cargo, its named insured.  Doc. 34 at 18.  And because Winiecki's only claim against Road Cargo is for Road Cargo's vicarious liability for its employee, the damages at issue could not have been "caused by" Road Cargo.  Not surprisingly, the policy precludes any interpretation that a named insured is not covered for liability arising from the acts of its employees.  Those claims "result[ed] from the ownership, maintenance or use of a covered auto by

---

[11] United asserts that "[t]he Exposure/Entity exclusion makes no exception for damage caused indirectly by another person or entity. … If the parties had intended to create a different rule for vicariously liable entities with respect to the requirement to be disclosed and scheduled on the Policy, they would have done so."  Doc. 34 at 17.  As explained above, Schneider is not alleged to have caused—directly or indirectly—the damages at issue.  Winiecki seeks to hold Schneider liable for the damages that *Singh* caused.

[Road Cargo]." Doc. 30 at 30, 43. The policy expressly covers those claims. In fact, United, without a reservation of rights, is defending Road Cargo in Winiecki's lawsuit which alleges Road Cargo is vicariously liable for Singh's acts. Docs. 26-2 ¶ 30; 34-1 ¶ 30. Clearly, the exposure/entity exclusion does not exclude coverage for the acts of Road Cargo's employees.

Finally, United's novel reading of its exposure/entity exclusion eviscerates the definition of an insured. If an entity that is vicariously liable for damages caused by an insured is also deemed to have caused the damages itself, then the inclusion of "anyone liable for the conduct of an insured" within the definition of an insured is pointless. Similarly, if United could refuse to cover its named insured for its vicarious liability for its employees, then the policy is a fiction. At the very least, United's interpretation of its exposure/entity exclusion creates ambiguities, and any ambiguities are construed against the insurer and in favor of coverage. See *Pilz*, 267 Ga. App. at 371-72, 599 S.E.2d at 221-22.

## IV. CONCLUSION

Schneider is an "insured" because Schneider is alleged to be liable for the conduct of Singh, who was operating a Road Cargo covered vehicle. And although Winiecki alleges Schneider was acting as a motor carrier, United admittedly knew that Schneider was not acting as a motor carrier. Further, United's reliance on the exposure/entity exclusion is contrary to both the language of the policy and common sense. Accordingly, the undisputed evidence establishes that there were true facts known or ascertainable to United that showed Schneider was arguably covered under the policy. Therefore, United owes Schneider a duty to defend, and summary judgment

on that ground is **GRANTED**.  But because the underlying lawsuit is ongoing, and liability has not been established, the duty to indemnify issue is not ripe and is thus **DENIED without prejudice.**

    **SO ORDERED**, this 10th day of May, 2022.

<div style="text-align:right">

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

</div>